# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 16-24785-CIV-GOODMAN
### [CONSENT]

CAROLYN VERONICA CHILDRESS,

     Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

     Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case challenges a denial of social security benefits. Plaintiff Carolyn Veronica Childress and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, filed cross-motions for summary judgment. [ECF Nos. 23-2; 26]. The Commissioner's motion also served as her opposition response to Plaintiff's motion. [ECF No. 27]. Although the Undersigned's scheduling order required Plaintiff to file a response to the Commissioner's motion and authorized Plaintiff to file a reply in support of her motion [ECF No. 22, ¶¶ 3–4], Plaintiff did not file the mandatory response or optional reply, and the time to do so has long expired. After the parties

---

[1] In accordance with Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this case. By reason of the last sentence of 42 U.S.C. § 405(g), no further action is needed to continue this suit.

consented to full magistrate-judge jurisdiction, United States District Judge Joan A. Lenard referred the entire case to the Undersigned. [ECF Nos. 20–21].

As explained below, the Court **denies** Plaintiff's summary judgment motion, **grants** the Commissioner's summary judgment motion, and enters a **final judgment** in the Commissioner's favor.

## I.    Background

When the Administrative Law Judge (the "ALJ") rendered her decision, Plaintiff was 54 years old and approximately two months from turning 55. (R. 17, 57).[2] Plaintiff worked previously as a janitor, personal care aide, food deliverer, and parking lot attendant. (R. 37–38, 259–260, 300). She also briefly worked as a janitor at Walmart after her alleged impairments began. (R. 37–38). She has a high-school education. (R. 55).

In November 2012, Plaintiff applied for social security benefits, alleging disability with an onset date of August 2012, due to chronic right knee pain, disc problems in the lower back, arthritis in her hands, and depression and anxiety. (R. 103–04, 110–11, 119, 128). The Commissioner denied the applications initially and on reconsideration, and Plaintiff asked for a hearing. (R. 103–38, 168). In June 2015, Plaintiff appeared with an attorney before the ALJ. (R. 50–102). A vocational expert (the "VE") provided testimony at the hearing. (R. 90–100).

In September 2015, the ALJ issued an opinion, concluding that Plaintiff was not

---

[2]    Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 19].

disabled. (R. 17–44). The Appeals Council denied Plaintiff's request for review. (R. 1–5). The Commissioner's final decision is now subject to review.

## II.    The Five-Step Evaluation Process for Disability Claims

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Court summarizes as follows:

1.    **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.    **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.    **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's RFC residual functional capacity ("RFC"); and then determine:

4.    **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.    **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial

evidence in the record supports his or her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips,* 357 F.3d at 1240 n. 8 (internal citation omitted).

While the Court applies a presumption in favor of an ALJ's finding of fact, no such presumption applies to an ALJ's legal conclusions. Thus, the Court must reverse if an ALJ incorrectly applied the law or if the decision fails to provide the Court with sufficient reasoning to determine whether the law was properly applied. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, at *5 (M.D. Fla. Jan. 22, 2008). An ALJ's failure to specify the weight given to evidence contrary to her decision, or failure to give the reason for discrediting evidence, is reversible error. *Hart v. Astrue*, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, at *5 (M.D. Fla. Sept. 19, 2011).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Perez,* 2008 WL 191036, at * 5.

## III.     The ALJ's Decision

Under step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 24). Although Plaintiff did work at Walmart for a short period after the onset date, the ALJ classified the employment as an

"unsuccessful work attempt that occurred after a significant break in the continuity of her work and ended due to her impairments." (R. 24).

Under step two, the ALJ found that claimant had several severe physical and mental impediments. (R. 24–25). The severe physical impairments were osteoarthritis of the spine and obesity. (R. 24).[3]

Under step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 25–31).

Under step four, the ALJ found that Plaintiff has an RFC to perform "medium work" subject to some other limitations. (R. 31). The additional physical limitations are that Plaintiff "can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, but never climb ladders/ropes/scaffolds." (R. 31). The ALJ also found that Plaintiff "can tolerate frequent exposure to cold, humidity, and hazards such as dangerous machinery and unprotected heights." (R. 31).

Under step five, the ALJ found that Plaintiff was able to perform her past relevant work as a janitor. (R. 37). But the ALJ also made two alternative findings. First, she found that the Medical-Vocational Guidelines, known as the "Grids," dictated a finding of "not disabled" given that Plaintiff was an individual closely approaching advanced age, had at least a high school education, and could communicate in English.

---

[3] Because Plaintiff's arguments here concern only her physical impairments, her mental impairments will not be discussed.

(R. 39). Second, through the help of the VE, the ALJ also found that Plaintiff would be capable of performing two jobs that exist in significant numbers within the national economy: hand launderer and night cleaner. (R. 40).

## IV.  Analysis

Plaintiff raises three arguments here. First, Plaintiff argues that the ALJ did not give "good/specific/supported" reasons for discounting a state agency consultant's opinion and her treating chiropractor's opinion, both of whom limited Plaintiff to light work. Second, Plaintiff argues that the ALJ should have deemed her a person of "advanced age," rather than a "person closely **approaching** advanced age," which, given the medical opinions limiting her to light work, would supposedly make her "presumptively disabled" under the Grids. Third, Plaintiff argues that the ALJ's credibility determination is flawed because it did not give sufficient credence to her steady past work history. The Court rejects all of these arguments.

### A.  *The ALJ's Weighing of Medical Evidence*

The pertinent medical evidence is as follows:

In early April 2012, shortly following a slip-and-fall accident, Plaintiff sought treatment with Dr. Jason S. Lopate, D.C., a chiropractor. (R. 489–92). She complained of pain in various areas, including the neck, back, right leg, right knee, and right ankle. (R. 489). Dr. Lopate diagnosed her with various acute post-traumatic strains and recommended an aggressive "course of physical modalities," such as physical therapy,

over four weeks. (R. 491).

A few weeks later, in late April 2012, Dr. Lopate wrote a note, releasing Plaintiff "to light duty work status with the following restrictions: no lifting of more than 10 lbs and repetitive lifting, bending or squatting." (R. 346).

One year later, in an examination report issued in April 2013, Dr. Lopate noted Plaintiff as reporting that she "enjoyed progressive improvement from the therapy she has received to date." (R. 495). Plaintiff, however, also reported that she still experienced pain in her lower back, right knee, and right ankle, among other issues (R. 495). Plaintiff also reported that activities of daily living aggravated her symptoms. (R. 495). Dr. Lopate opined that Plaintiff had reached the maximum level of medical improvement and had suffered an eight-percent impairment in her body as a result of her slip-and-fall accident. (R. 495).

The same month, Dr. Carlos Martinez examined Plaintiff at the request of the state agency. (R. 327–30). Among other things, Dr. Martinez noted that Plaintiff had a normal gait with no limp and did not use assistive devices. (R. 328). Dr. Martinez also noted no significant negative findings concerning her extremities, fine motor activities of the hands, and her musculoskeletal structure. (R. 329). Moreover, Dr. Martinez noted that Plaintiff's grip strength ranked as 5/5 and that her muscle tone and strength were normal, also ranking as 5/5. (R. 328–29). As his overall opinion, Dr. Martinez wrote that Plaintiff "does not appear to have limitations with activities requiring normal standing,

walking, climbing a few steps, bending, or carrying objects during this exam," and that "[t]here seems to be no limitations for sitting or with upper extremities for gross motor activities at present time." (R. 330).

In June 2013, a state agency non-examining physician, Dr. Minal Krishnamurthy, issued an opinion after evaluating some medical records. (R. 122–27). Dr. Krishnamurthy concluded, among other things, that Plaintiff could perform light work with the ability to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; could stand/walk or sit up to 6 hours in an 8-hour day; had no limits for pushing and pulling; and could occasionally perform postural movements. (R. 123–24).

From March 2014 to July 2015, the medical record contains sporadic treatment notes from certain hospitals and clinics, all showing unremarkable physical findings. In March 2014, Plaintiff presented at Homestead Hospital, complaining of moderate pain in the area of her right foot. (R. 459). But the clinical report noted no neck or back pain or any other significant physical issues. (R. 459–60).

In April 2014, Plaintiff presented at Camillus Health Concern, a clinic affiliated with Camillus House, claiming that she needed "disability" due to arthritis and back pain. (R. 443). Although she had pain in one or more joints and in her back, Plaintiff's musculoskeletal system was noted as being normal. (R. 444–46). During a follow-up in May 2014, her musculoskeletal system was again noted as being normal. (R. 441). And during another follow-up in July 2014, Plaintiff reported feeling better and requested a

"Jackson card." (R. 430).

In October 2014, Plaintiff was treated at Jackson Health System for a cough. (R. 402–04). Her musculoskeletal system was noted as being normal during the visit. (R. 403). In December 2014, Plaintiff again presented at Jackson Health System with a cough. (R. 413). And her musculoskeletal system was noted as being normal during that visit as well. (R. 413). Lastly, in July 2015, although Plaintiff presented at Jackson Health System due to pain in her feet, no examinations were reported. (R. 551–52).

Moving to the ALJ's findings, the ALJ gave Dr. Lopate's opinion "some weight because although he was a treating provider, he is nevertheless an unacceptable medical source . . . and his opinion was heavily based on the claimant's subjective complaints." (R. 36). The ALJ explained that Dr. Lopate's chiropractic notes did not support the limitations he had imposed on Plaintiff's future work. (R. 36). Moreover, the ALJ found that the opinions of examining and state agency consultants, to which she gave greater weight, contradicted Dr. Lopate's imposed limitations. (R. 36).

Concerning Dr. Krishnamurthy's non-examining opinion, the ALJ gave it some weight because Dr. Krishnamurthy also opined that Plaintiff was not disabled. (R. 34). The ALJ, however, noted that Dr. Krishnamurthy did not review more-recent medical records, which showed that, for the intervening two years, Plaintiff sought sporadic and conservative medical treatment. (R. 35). The ALJ also explained that one of those visits was for the express purpose of seeking disability and that the "[o]bjective findings were

consistently unremarkable and largely normal." (R. 35). The ALJ also found that Dr. Krishnamurthy, like Dr. Lopate, relied too heavily on Plaintiff's subjective complaints. (R. 35).

To withstanding judicial review, the ALJ is required to "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (internal quotations omitted). Thus, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," the court will "decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (internal quotations omitted).

The ALJ must also "give the medical opinions of treating physicians substantial or considerable weight," unless there is good cause not to. *Id.* (internal citations omitted). Good cause exists in three circumstances: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so." *Id.* (internal citations omitted).

The Court is also mindful that, in this type of appeal, a court cannot reweigh the evidence, even where it would preponderate against the ALJ's findings. *See, e.g., Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) ("when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly."). Thus, "[t]o the extent that [Plaintiff] points to other evidence which would undermine the ALJ's [] determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

Here, the ALJ sufficiently articulated good-cause grounds to give some weight to Dr. Lopate's opinion, and substantial evidence supports those grounds. First, chiropractors are indeed not acceptable medical sources, and, as such, their opinions may be discounted to establish the existence of an impairment. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that "ALJ's decision to discount chiropractor['s] opinion was supported by substantial evidence for two reasons," one of which was that the chiropractor "is not considered an 'acceptable source' and, thus, his opinion cannot establish the existence of an impairment.").

To be sure, the federal regulations state that "in addition to evidence from acceptable medical sources, the ALJ may also use evidence from other sources to show the severity of the claimant's impairment and how it affects her ability to work." *De Olazabal v. Soc. Sec. Admin., Com'r*, 579 F. App'x 827, 832 (11th Cir. 2014) (internal

quotations omitted). But, as will be shown shortly, the ALJ did just that.

Second, a year after Dr. Lopate had released Plaintiff back to work with certain physical restrictions, Plaintiff reported "progressive improvement" from her therapy. (R. 495). Moreover, although Plaintiff complained of continued pain and difficulties during this later examination, Dr. Lopate did not opine that Plaintiff was limited to light work. Thus, substantial evidence supports the ALJ's conclusion that Dr. Lopate's medical notes do not support a light-work limitation. *See Bryant v. Colvin*, 661 F. App'x. 686, 692 (11th Cir. 2016) (holding that good cause supported the ALJ's decision to give little weight to the treating physician's opinion where the opinion was inconsistent with treatment records and not supported by the evidence in the record).

Third, Dr. Martinez also did not note the need for light-work limitations during his examination, which occurred the same month as Dr. Lopate's final examination. (R. 327–30). Among other things, Dr. Martinez noted no significant negative findings concerning Plaintiff's extremities, fine motor activities of the hands, and her musculoskeletal structure. (R. 329). He further noted that Plaintiff enjoyed full strength. (R. 328–29). And he ultimately opined that Plaintiff "does not appear to have limitations with activities requiring normal standing, walking, climbing a few steps, bending, or carrying objects during this exam," and that "[t]here seems to be no limitations for sitting or with upper extremities for gross motor activities at present time." (R. 330). The ALJ gave Dr. Martinez's opinion significant weight. (R. 35). Thus, substantial evidence

supports the ALJ's finding that other medical evidence contradicted Dr. Lopate's opinion. *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015) (holding that ALJ did not err in discounting medical opinion as "inconsistent with the other medical evidence.").[4]

Concerning Dr. Krishnamurthy, the ALJ also articulated sufficient reasons to give some weight to the non-examining doctor's opinion, and substantial evidence supports those reasons. The same grounds that justify discounting Dr. Lopate's opinion apply with equal force here, if not more force, given that Dr. Krishnamurthy is not even a treating physician.[5] Indeed, the opinion of an examining physician, like Dr. Martinez, is generally entitled to more weight than the opinion of a non-examining physician. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Also, as the ALJ noted, Dr. Krishnamurthy did not see the 2014 and 2015 treatment notes that showed Plaintiff's sporadic and

---

[4]     Notably, Plaintiff admits that Dr. Martinez's "medical source statement could align with either medium or light work." [ECF No. 23-2, p. 8, n. 3]. Thus, Plaintiff recognizes that Dr. Martinez's assessment may constitute evidence that Plaintiff can perform medium work. It is the ALJ's job, and not the Court's, to weigh the evidence.

[5]     Moreover, even if the ALJ gave Dr. Krishnamurthy's opinion great weight, the Court does not see how that would help Plaintiff's case. Dr. Krishnamurthy ultimately opined that Plaintiff, although limited to light work, was *not* disabled. Thus, given that the ultimate issue is whether Plaintiff is disabled, remand would be wasteful because further findings would not alter the ALJ's non-disability determination. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.").

conservative medical treatment and displayed no remarkable physical findings.[6]

Furthermore, as to both Dr. Lopate and Dr. Krishnamurthy, as a general rule, the ALJ may grant little weight to a medical opinion that relies heavily on the claimant's subjective complaints, particularly when the subjective complaints do not match the objective evidence. *See Lacina*, 606 F. App'x at 528 (affirming ALJ giving little weight to medical opinion where doctor "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant."). As shown already, the objective medical evidence did not match the doctors' opinions that Plaintiff is limited to light work. Thus, the Court cannot conclude that the ALJ erred in finding that the doctors relied too heavily on Plaintiff's subjective complaints in light of the objective medical evidence.[7]

---

[6]     Plaintiff's argument that the gap in treatment should not be held against her because of her poverty is misplaced. While it is generally true that poverty excuses noncompliance with prescribed medical treatment, *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003), that rule has no application in this case. Plaintiff's chiropractor opined in April 2013, that Plaintiff had reached the maximum level of medical improvement. (R. 495). There is no evidence that Plaintiff was then prescribed additional aggressive treatment but could not afford it. Rather, consistent with the ALJ's findings, the record shows that, after Dr. Lopate, Plaintiff sought -- and, more importantly, *obtained* -- sporadic and conservative medical treatment at various hospitals and clinics.

[7]     Contrary to one of Plaintiff's arguments, it is not fair to say that, in analyzing the medical evidence and assigning various weights to it given the record as a whole, the ALJ relied on her "lay analysis of the raw medical data." [ECF No. 23-2, p. 15]. It is the ALJ's job to assess Plaintiff's RFC. Doing so by weighing the evidence, or lack of evidence, is not the same as "playing doctor." *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (holding that "the ALJ did not 'play doctor' in assessing Mr. Castle's

In sum, the ALJ did not err when weighing the medical evidence.

**B.**    *Plaintiff as a Person Approaching Advanced Age*

The Grids differentiate between a "person closely approaching advanced age" --
a person between the ages of 50 and 54 -- and "a person of advanced age" -- a person 55
years or older. 20 C.F.R. § 404.1563(d), (e). "The grids are based on the claimant's
residual functional capacity, age, education and work experience, and in cases where
they apply, they direct a conclusion on the issue of whether the claimant is capable of
performing substantial gainful activity in the national economy." *Patterson v. Bowen*, 799
F.2d 1455, 1458 (11th Cir. 1986). "In attempting to meet its burden, the Commissioner
may rely upon the grids to establish that other work exists in the national economy that
the claimant is able to perform." *Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 634 (11th
Cir. 2007). In other words, the Grids may point the ALJ to a finding of disability or non-
disability based, in substantial part, on the claimant's age.

In this case, however, "the treatment of [Plaintiff] as either a person of advanced
age or closely approaching advanced age under the grids is essentially theoretical
because the ALJ did not rely exclusively on the grids in making the disability
determination." *Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635 (11th Cir. 2007). In
*Miller*, the claimant was less than two months shy of his 55th birthday, but the Eleventh

---

RFC, but instead properly carried out his regulatory role as an adjudicator responsible
for assessing Mr. Castle's RFC[,]" by giving the treating physician's opinion little
weight and examining other medical evidence on record).

Circuit nonetheless held that, because the ALJ used a VE to finds jobs that the claimant could perform, "the ALJ's decision was not made in reliance upon the grids and, thus, a determination of whether Miller was a person of advanced age or closely approaching advanced age was not necessary." *Id.* Here, the ALJ also used a VE when concluding that Plaintiff would be capable of performing certain jobs. (R. 40). Therefore, the advanced-age question is a non-issue.

Moreover, assuming that it was an issue, "[u]nder our precedent, if a claimant wishes to establish that his ability to adapt was less than the level established under the grids for persons his age, he must proffer evidence tending to establish that fact." *Miller*, 241 F. App'x at 635–36 (citing *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984)). This is known as a *Reeves* proffer. It is not enough for claimants to say that they should be considered as being of advanced age simply because they are close to turning 55. *See id* at 636 (rejecting claimant's advanced-age argument because the "only reason in support of his contention that he should have been treated as a person of advanced age is that he was only two months short of turning 55 at the time of the hearing and the ALJ's decision.").

In this case, Plaintiff did not and does not make a *Reeves* proffer. Rather, she simply argues that "[t]he ALJ [] erred when [s]he failed to account for the fact that Plaintiff was less than two months short of her 55th birthday at the day of the ALJ's decision." [ECF No. 23-2, p. 6]. That is the same birthday-based argument that the *Miller*

Court rejected, *Miller*, 241 F. App'x at 636, and thus the Court rejects it here.

In sum, the ALJ did not err in not considering Plaintiff to be of advanced age.

**C.** **The ALJ's Credibility Determination**

When claimants attempt to prove disability based on their subjective symptoms, they must show "evidence of an underlying medical condition" and either "objective medical evidence that confirms the severity of the alleged pain or symptoms arising from that condition" or evidence that the "objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (internal citation omitted). The ability to determine the credibility of a plaintiff's subjective thoughts is reserved to the ALJ. *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) (citing *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987)). But "[i]f the ALJ decides not to credit such testimony, [the ALJ] must articulate explicit and adequate reasons for doing so." *Holt*, 921 F.2d at 1223 (internal citation omitted).

In the Eleventh Circuit, a "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). When credibility is crucial to the outcome of a case, the lack of an explicit credibility finding can be grounds for remand. *Id.* (citing *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982)).

In this case, the ALJ found that Plaintiff's statements about the intensity,

persistence, and limiting effects of her symptoms were not entirely credible. (R. 32). In so finding, the ALJ relied on objective medical evidence, which showed that Plaintiff enjoyed progressive improvement during the year that Dr. Lopate treated her, at the end of which she achieved a maximum level of medical improvement. (R. 32). The ALJ also noted that Plaintiff received no treatment for osteoarthritis thereafter and was not prescribed any related medication, save for ibuprofen. (R. 33). And routine examinations from Camillus House showed unremarkable physical findings. (R. 33).

The ALJ then elaborated further on her opinion regarding Plaintiff's lack of credibility:

> I have considered the claimant's subjective complaints with regard to pain, precipitating and aggravating factors, medications and other treatment, and any functional restrictions and the claimant's daily activities (20 CFR 404.1529 and 416.929). The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the medical history, the findings made on examination, the claimant's assertions concerning her ability to work, and the reports of the reviewing, treating and examining physicians.

(R. 36).

The ALJ also explained, among other things, that (1) "the claimant reported working after the alleged onset date and had a sporadic work history prior to the alleged onset date;" (2) "medical tests and studies do not support the claimant's allegations and no medical opinion stated the claimant was unable to work;" (3) "the

claimant['s] testimony was vague, inconsistent, evasive, exaggerated, unpersuasive, and not forthcoming;" (4) Plaintiff's "inability and refusal to answer simple questions undermine[d] her credibility;" (5) "the claimant's representative has never addressed a number of questions about the claimant's work at Walmart, despite intervening months and multiple requests;" and (6) "the evidence strongly suggests the claimant exaggerated her impairments and limitations." (R. 36–37).

Lastly, the ALJ explained:

> In the present case, it is emphasized that the claimant has received minimal, conservative treatment. Medical tests and studies do not corroborate the claimant's allegations. Therefore, the record tends to suggest that the claimant is finding adequate relief with her treatment regimen and it simply fails to demonstrate the presence of ongoing significant pathological clinical signs, objective medical findings, laboratory findings, radiological findings, or neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in at least medium work on a sustained basis.

(R. 37).

As already discussed at length, the ALJ relied on substantial evidence to support her conclusion that Plaintiff's subjective complaints did not match the objective medical evidence. The ALJ went into even greater detail regarding the medical evidence in her credibility determination. Moreover, the ALJ pointed to issues with Plaintiff's vague and evasive testimony. The ALJ may consider such shortcomings when weighing a claimant's credibility, and the Court, not being present at the hearing, must give deference to the ALJ's determination of truthfulness. *See Perez Guerrero v. Colvin*, No. 14-

23841-CIV, 2016 WL 4807953, at *7 (S.D. Fla. Mar. 23, 2016) (finding "no reason to reverse the ALJ's decision based on his finding that Plaintiff was 'vague and evasive'" and explaining: "Because a reviewing court cannot observe a claimant while he is testifying, the ALJ's determination regarding a claimant's truthfulness should be given deference."). In short, the ALJ's credibility determination is sufficiently articulated and supported by substantial evidence.

Concerning Plaintiff's specific argument regarding her length of work, as one Middle District of Florida case recently put it:

> While a claimant's "prior work record" is a consideration in evaluating a claimant's credibility, 20 C.F.R. § 404.1529(c)(3), "the Eleventh Circuit has not had occasion to rule on the issue" of whether an ALJ's failure to consider a claimant's "lengthy and consistent work record" in evaluating a claimant's credibility is erroneous.

*Mahon v. Comm'r of Soc. Sec.*, No. 8:16-CV-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (quoting *Lafond v. Comm'r of Soc. Sec.*, No. 6:14-CV-1001-ORL-DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015)).

After reviewing some non-binding cases, the *Mahon* court went on to find that "[a]lthough the ALJ did not expressly discuss Plaintiff's work history in assessing her statements regarding her symptoms, it is clear the ALJ reviewed and considered statements regarding her prior work record." *Id.* The ALJ ultimately found the claimant not credible in light of the whole record. *Id.* In other words, the *Mahon* court viewed the claimant's work history as another *factor* for the ALJ to consider.

In this case, contrary to Plaintiff's assertion, the ALJ *did* consider Plaintiff's work history, both pre and post-onset. The ALJ noted that Plaintiff had a sporadic work history before the alleged onset date and tried to work at Walmart after the onset date. The ALJ even attempted to obtain more information about the post-onset employment, but she was not provided with further answers. Looking at Plaintiff's work history as part of the whole record, the ALJ ultimately deemed Plaintiff not credible. The Court finds no error in that process. And the Court cannot reweigh the evidence, even where it would preponderate against the ALJ's findings. *Powers*, 738 F.2d at 1152.

In conclusion, the Court **denies** Plaintiff's summary judgment motion, **grants** the Commissioner's summary judgment motion, and enters a **final judgment** in the Commissioner's favor. The Clerk of the Court is directed to **close the case**.

**DONE AND ORDERED** in Chambers, Miami, Florida, on March 26, 2018.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record